SUTTON (BAILEY v.). See Case No. 747.

## Case No. 13,646.

### SUTTON v. HENNELL et al.[1]

Circuit Court, S. D. New York. Oct. 3, 1853.

AFFREIGHTMENT — SALE OF CARGO TO REALIZE FREIGHT—INADEQUACY OF PRICE—BALANCE.

[Where, by direction of the master, and to realize freight, goods were sold at San Francisco, through an auction house, in the customary way, and after the usual advertisements in newspapers, hand bills, and placards, the mere fact that the price realized was less than half the amount of the freight, and that the purchaser, within a few weeks, sold the goods at retail at an advance of about 200 per cent., is not sufficient to show that there was any fraud or unfairness on the part of the master, such as would relieve the shipper from liability for a balance of freight.]

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel by Effingham H. Sutton against Frederick Hennell and others to recover a balance of freight. From a decree of the district court dismissing the bill (case unreported), libelant appealed.]

Platt, Gerard & Buckley, for appellant.
Betts & Donohue, for appellees.

NELSON, Circuit Justice. This libel was filed in the court below to recover a balance of freight earned by the ship Cygnet for goods shipped from the port of New York to San Francisco in the fall of 1849. The goods described in the bill of lading consisted of thirteen bundles, thirty-one packages, and twenty-two pieces of lumber, two cases, five joists, two bundles of doors, and a considerable quantity of plank and boards, particularly specified. The freight was 55 cents per cubic foot, with 5 per cent. primage, amounting, in the whole, to the sum of $2,350.70, payable on delivery of cargo; the delivery to the order of the respondents, the shippers, or their assigns. The goods were to be called for at the port of delivery within twenty days after arrival of the ship, and freight paid, or sufficient to be sold for payment of the same. The vessel arrived at the port of San Francisco the latter part of March, 1850. No consignee of the cargo or other person appeared to receive the delivery of it and pay the freight, and, after the ex-

piration of the time mentioned in the bill of lading, it was turned over by the master of the vessel to the house of Mellus, Howard & Co., to take the proper measures to collect it. They put the bill of lading into the hands of J. L. Riddle & Co., one of the first auction houses in the city of San Francisco, with direction to sell the goods at auction for the purpose of paying freight. They were advertised accordingly for sale in the usual and customary way, in the newspapers, and hand bills or placards, and sold at the auctioneers' rooms on the 30th of April, after the arrival of the ship, to Charles Scholfield, he being the highest bidder, for the sum of $1,250. leaving a balance of freight unpaid of $1,293.69, to recover which this libel has been filed.

It appears from the evidence of Scholfield, the purchaser, that he resold the property within a few weeks after the purchase at auction, and by retail, for an advance of between two and three thousand dollars, and it is supposed and contended, on the part of the shippers, that there must have been some unfair dealing in the sale by the master, or persons employed by him, or else there could not have been so great a sacrifice of the property. The adventure has certainly been an unfortunate one, but I find no evidence in the case to charge the loss upon the master or his owners. He has been examined in the case, also a member of the house, and his clerk, who had charge of the sale, the auctioneer, and purchaser, and their testimony is full and conclusive that the sale was made in the usual way, and with all the means customary to induce competition in bidding at public auction. Efforts were made to ascertain if the goods had been consigned to any one, and from the initials in the bill of lading it was supposed possible that a Mr. Gelston, of Sacramento City might be the owner, and a letter was addressed to him accordingly, but no answer received; and it is more than probable upon the proofs, that the bill of lading had been transferred to him by the respondents, and that he had an agent attending the sale, and who bid upon the goods, but declining to take the cargo and pay the freight. The evidence was not of a character that would authorise us to place reliance upon it in deciding the case, but it would have been more satisfactory if some explanation of the circumstance had been given by the respondents. It must have been in their power to have removed any unfavorable inferences against them in this matter. But I do not regard this view as at all material in the case. The ground upon which I place the decision is that the proofs are full and satisfactory, that the sale of the goods was fair, and made in the usual and customary way, and after all reasonable steps had been taken, under the circumstances, to obtain for them the highest market price. Considerable quantities of other goods were sold at the

---

[1] [Not previously reported.]

same time, embraced in the same public advertisement of the sale, and some fifty bidders present, and several bids made for these goods before struck down to the purchaser. If there had been a sacrifice of the goods of the respondents, it is their misfortune, and referable to the hazards of the trade in which they were engaged. The libellant has performed his part of the contract entered into with them, and is entitled to his compensation.

I cannot, therefore, agree with the late Judge Judson that the sale was irregular, or that an inference of unfairness is warranted from inadequacy of price, after the explanation given by the proofs in this case. I must, therefore, reverse the decree below, and direct a decree for the balance of the freight and interest, with costs.